# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| TONYA HENZE, | ) |
| | ) |
| Plaintiff, | ) Case No. 09-00099-CV-W-DGK |
| | ) |
| v. | ) |
| | ) |
| CITY OF LEE'S SUMMIT, MISSOURI, et al., | ) |
| | ) |
| Defendants. | ) |

## AMENDED ORDER

Pending before the Court is Defendants City of Lee's Summit, Missouri ("Lee's Summit" or "the City") and George W. Harding's ("Harding") Motion for Summary Judgment. Doc. 13. The Court has reviewed this Motion in conjunction with Defendants' Suggestions in Support, Plaintiff Tonya Henze's Suggestions in Opposition, Defendants' Reply and all attached exhibits. Docs. 14, 23, 26. For the reasons discussed herein, Defendants' Motion is GRANTED IN PART AND DENIED IN PART. Defendant Harding is entitled to summary judgment on Counts III and IV. Lee's Summit is not entitled to summary judgment on Count II. Defendants are entitled to summary judgment on Plaintiff's hostile work environment sexual harassment claim in Count I, but not on Plaintiff's disparate treatment claims.

## Background

Plaintiff filed this action on January 14, 2009 in the Circuit Court of Jackson County, Missouri, alleging four counts. Count I alleges sex discrimination and harassment in violation of

the Missouri Human Rights Act ("MHRA") against Lee's Summit and Harding.[1] Count II alleges violations of the federal Equal Pay Act against Lee's Summit. Count III alleges the tort of malicious prosecution against Harding. Count IV alleges the tort of abuse of process against Harding. On February 2, 2009, Defendants removed the case to federal court on the basis of the federal claim in Count II. 29 U.S.C. § 206.[2]

**Standard**

Pursuant to Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). Summary judgment requires the Court to consider the facts in the light most favorable to the nonmoving party, who also "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.,* 950 F.2d 566, 569 (8th Cir. 1991). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Rather, the nonmoving party must set forth

---

[1] While Plaintiff refers to Count I as employment discrimination, the specific allegations constitute claims of hostile work environment sexual harassment and disparate treatment on the basis of gender.

[2] "No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee." 29 U.S.C. § 206(d)(1).

specific facts showing there is a genuine issue of material fact. *Anderson,* 477 U.S. at 248. Local Rule 56.1(a) sets out the manner in which motion for summary judgment should be filed in this Court.

> "The suggestions in support of a motion for summary judgment shall begin with a concise statement of uncontroverted material facts. Each fact shall be set forth in a separately numbered paragraph. Each fact shall be supported by reference to where in the record the fact is established…Suggestions in opposition to a motion for summary judgment shall begin with a section that contains a concise listing of material facts as to which the party contends a genuine dispute exists…All facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party."

Local Rule 56.1(a).

## Discussion

### A. Facts

The Court finds the undisputed material facts to be as follows. Immaterial facts or facts the Court views in the light most favorable to the nonmoving party for the purposes of summary judgment are omitted from this section.

#### 1. General Facts

Plaintiff was employed as an animal control officer ("ACO") for the City from November 2003 to September 2007. Doc. 14 at ¶¶ 1, 6, 34. During this time, Defendant Harding was employed by the City as the supervisor of the Animal Control Department. Doc. 14 at ¶ 3. Defendant Harding is still employed in that position. *Id.* The Animal Control Department is a division of the Lee's Summit Police Department, which in turn is a city agency. Doc. 14 at ¶ 2. The City's ACOs are responsible for enforcing city ordinances and investigating incidents involving animals. Doc. 14 at ¶ 7. The majority of Plaintiff's time on the job was spent on the road responding to calls. *Id.* When Plaintiff started, she became the fourth ACO; two male and two female. Doc. 14 at ¶ 8. During her employment, Plaintiff had some conflicts with Phil

3

Rose, a male ACO, leading Plaintiff to file an intra-office report in 2004. Doc. 14 at ¶ 13, Doc. 14-5. During the last year of her employment as an ACO, 2007, Plaintiff was experiencing personal problems, seeing a counselor and was on leave for a time in August for "mental and physical exhaustion." Doc. 14 at ¶¶ 15-16. On September 10, 2007, Plaintiff had a conversation at the Animal Control Shelter with Denise Perry, a shelter employee. Doc. 14 at ¶ 22. As a result of this conversation, Ms. Perry provided a statement to the Lee's Summit Police Department which alleged that Plaintiff made threats to kill Defendant Harding, Phil Rose, Plaintiff's ex-husband and Plaintiff's boyfriend's ex-wife.[3] Doc. 14 at ¶ 26, Doc. 14-10. Plaintiff was terminated from her employment on September 27, 2007.[4] Doc. 14 at ¶ 33, Doc. 14-14. Plaintiff appealed to City Administrator Stephen Arbo, who sustained her termination on October 12, 2007. Doc. 14 at ¶ 34, Doc. 14-15.

**2. Sexual Harassment Allegations**

On December 12, 2007, Plaintiff filed a charge of discrimination with the Missouri Commission on Human Rights and the EEOC, alleging gender discrimination and harassment. Doc. 14 at ¶¶ 35-37, Doc. 1-2 at 14-20. Plaintiff alleges that Phil Rose harassed her by calling her a "loser," making an "L" shape with his hand to indicate "loser," accusing her of not working hard enough, and throwing a pen and clipboard at her in 2004. Doc. 14 at ¶ 38a-c. Plaintiff alleges that Defendant Harding harassed her by saying things like, "you're taking a f**king long time," "f**k you," "this is f**king wrong," and "sucks to be you." Doc. 14 at ¶ 40a-b, Doc. 14-4 at 44:10-14, 20-25. Plaintiff also alleges that Defendant Harding harassed her by saying, "What are you complaining about? You have done nothing but sit on your ass while Phil has done all

---

[3] The parties dispute the substance of Plaintiff's conversation with Ms. Perry, but Plaintiff admits that she had a conversation with Ms. Perry and that Ms. Perry then gave a statement to this effect. Doc. 23 at ¶¶ 22, 26.
[4] Plaintiff alleges that the letter is "backdated" to August 16, 2007. It is unclear why that date appears in the letterhead, but the Chief of Police's signature is clearly dated 9-27-2007. Doc. 14-14.

the work. Just shut the f**k up, and get back to work so that I can get on the road and help finish calls." Doc. 14 at ¶ 40c, Doc. 14-4 at 66:15-24. Defendant Harding acknowledges that he has used the phrase "sucks to be you," though the parties dispute the sexual connotations on this phrase. Doc. 14 at ¶ 41.

### 3. Disparate Treatment Allegations

In support of her disparate treatment sex discrimination claims, Plaintiff claims that she was made to work less desirable shifts than Phil Rose. Doc. 14 at ¶ 42a, c. Plaintiff alleges that she was not allowed to return to work to finish her paperwork and other duties before the end of her shift, whereas Phil Rose was allowed to do that. Doc. 14 at ¶42b, Doc. 23 at ¶ 42b. Plaintiff alleges that she and Phil Rose were treated differently with respect to cleaning their trucks. Doc. 14 at ¶ 42d-e. Plaintiff alleges that Harding violated a policy when he did not allow her a higher pay rate for training an ACO. Doc. 14 at ¶ 42f. Plaintiff claims that she was not allowed to take restroom or food breaks while taking calls. Doc. 14 at ¶ 42g. Plaintiff claims that she was assigned cases that male ACOs refused to take to court. Doc. 14 at ¶ 42h.

### 4. Malicious Prosecution/Abuse of Process Allegations

After being informed that criminal charges related to Plaintiff's alleged threats were unlikely, Defendant Harding filed a Petitioner for Order of Protection in the Circuit Court of Jackson County, Missouri on September 12, 2007. Doc. 14 at ¶¶ 43-44. Defendant Harding's Petition was set for a hearing on October 16, 2007. Doc. 14 at ¶ 45. Defendant Harding did not retain an attorney or subpoena any witnesses for this hearing. *Id.* Defendant Harding's Petition was dismissed at the hearing. Doc. 14 at ¶ 46. Plaintiff alleges that Defendant Harding filed this Petition maliciously and without reasonable grounds. Doc. 14 at ¶ 51. Plaintiff also alleges that this Petition utilized the legal process for wrongful and malicious purposes. Doc. 14 at ¶ 52.

### 5. Equal Pay Act Allegations

Plaintiff alleges that the City engaged in sex-based wage discrimination. Doc. 14 at ¶ 47. Plaintiff alleges that she was treated differently with regard to her overtime compensation. Doc. 14 at ¶ 50.

### B. Defendant Harding is Entitled to Summary Judgment on Counts III and IV

Count III alleges the tort of malicious prosecution in connection with Defendant Harding's petition for a protective order. In Missouri, the tort of malicious prosecution has six elements.

> "To prevail on a claim for malicious prosecution, a plaintiff must prove the following elements: (1) the previous commencement of a lawsuit against the plaintiff; (2) that was instigated by the defendant; (3) that terminated in favor of the plaintiff; (4) due to a lack of probable cause for the instigation of the suit; (5) because the defendant's conduct was motivated by malice; and (6) the plaintiff sustained damages as a result."

*Diehl v. Fred Weber, Inc.*, -- S.W.3d --, 2010 WL 286744, at *5 (Mo. Ct. App. January 26, 2010). The first three elements are undisputed by the parties. Defendant Harding did institute proceedings against Plaintiff, which were terminated in Plaintiff's favor. Regarding probable cause, in this context it "means a reasonable belief in the facts plus a reasonable belief that the claim may be valid under the applicable law." *Id.* "Probable cause does not depend upon what may have ultimately proved to be the actual state of facts embraced in the previous action or proceeding, but instead upon the honest and reasonable belief of one who instigated its prosecution." *Id.* (quoting *Zahorsky v. Griffin, Dysart, Taylor, Penner and Lay, P.C.*, 690 S.W.2d 144, 151-52 (Mo. Ct. App. 1985)). The parties agree that Defendant Harding was advised to seek a protective order by the Lee's Summit Police Department and that they assisted him in filing it. Doc. 14 at ¶ 43, Doc. 23 at ¶ 43, Doc. 14-1 at ¶ 18. Furthermore, the parties agree that the termination of Defendant Harding's petition was based on his failure to present

admissible evidence, rather than a judgment that there was not probable cause for the instigation of the suit. Doc. 14 at ¶ 44, Doc. 23 at ¶ 44c, Doc. 14-1 at ¶ 19. Given that the parties agree that Defendant Harding, through the police, was aware of Ms. Perry's version of her conversation with Plaintiff, that Defendant Harding was advised and assisted by the police to file his Petition, and that the termination thereof was based on his failure to present evidence, not the initial deficiency of the petition, Plaintiff cannot present a prima facie case on at least the fourth element of a malicious prosecution case. The Court finds that these issues, particularly the police advice, are also relevant to Plaintiff's ability to show Defendant Harding's malice. In response, Plaintiff claims that Defendant "did not consider himself threatened by plaintiff." Plaintiff provides no citation to support this. To the contrary, Plaintiff's exhibits clearly show that Defendant Harding stated that he *did* feel threatened. Doc. 23 at ¶ 23g, Doc. 23-24 at 115:9, 116:2-3. She claims that the fact that he relied on the advice of non-lawyers in filing the petition shows that he "obviously filed the action…without intending to actually put on evidence to support his case." Even if true, this is irrelevant. Defendant Harding, a layman, is not required to have known the rules of evidence or how to best proceed at a protective order hearing to avoid liability for malicious prosecution. The critical issue is his subjective belief in the basis for his action. The parties agree that he relied on the advice of the police and that he felt threatened. Based on this, Plaintiff cannot present a prima facie case of malicious prosecution and Defendant Harding is entitled to summary judgment on Count III.

Plaintiff also claims that Defendant Harding's pursuit of a protective order constituted the tort of abuse of process. Abuse of process is in the same legal ballpark as malicious prosecution, but with some important distinctions. There are three elements: "(1) the defendant made an illegal, improper, perverted use of process, which was neither warranted nor authorized by the

7

process; (2) the defendant had an improper purpose in exercising such illegal, perverted, or improper use of process; and (3) the plaintiff sustained damages as a result." *Diehl,* 2010 WL 286744, at *7. Plaintiff's contention is that Defendant Harding's motive was to "further harass plaintiff and cause her to incur needless expense in legal fees and costs." While that would satisfy the second element, if true, the view that this is sufficient for an abuse of process claim conflates it with malicious prosecution. Missouri courts are clear that abuse of process is not solely about the defendant's subjective motive, but rather his or her choice and use of process. *See Duvall v. Lawrence,* 86 S.W.3d 74, 85 (Mo. Ct. App. 2002) (noting that "if the action is confined to its regular and legitimate function in relation to the cause of action at issue, there is no abuse even if the plaintiff had an ulterior motive in bringing the action, or if he knowingly brought the suit upon an unlawful claim"); *see also Guirl v. Guirl,* 708 S.W.2d 239, 245 (Mo. Ct. App. 1986) ("The essence of abuse of process is not the commencement of an action without justification, but it is the misuse of process for an end other than that which it was designed to accomplish."). If Defendant Harding had used an action for a protective order to attempt to garnish Plaintiff's wages or execute against her property, a claim for abuse of process might exist. However, because Plaintiff focuses her claims on his subjective motives, she has failed to present a prima facie case for abuse of process. Regardless of any potential ulterior motive, Defendant Harding did not go beyond the "regular and legitimate function" of a protective order, as evidenced by the fact that he merely had to check existing boxes on a form. Doc. 1-2 at 25. Defendant Harding is entitled to summary judgment on Count IV.

C.  **Sex Discrimination**

    a.  **Defendants Have Failed to Show That There is No Genuine Issue of Material Fact Regarding Plaintiff's Sex as a Contributing Factor**

In order to survive summary judgment on a sex discrimination claim, a Missouri plaintiff must show that there is a genuine issue of material fact as to whether the protected classification at issue was a contributing factor in a discriminatory act.  *Daugherty v. City of Maryland Heights,* 231 S.W.3d 814, 820 (Mo. 2007).  Defendants focus the argument section of their Motion on Plaintiff's termination, but a brief review of the Complaint makes clear that Plaintiff has alleged several situations in which male ACOs were treated differently, including being given more favorable shifts, being allowed to complete paperwork during their shift, not being required to clean the trucks, and not being required to take certain cases to court.  Doc. 1-2 at ¶ 10.  In response, Defendants point out that Plaintiff admitted, for example, that "one other female ACO was allowed to eat and take restroom breaks prior to responding to a call."  Doc. 14 at ¶ 42g, Doc. 14-4 at 59:16.  This misses the point of "contributing factor" analysis, and seems to argue that Defendants have to have discriminated against all members of a class in a particular way in order for Plaintiff to have a claim.  The fact that other female ACOs were allowed to take restroom breaks, if true, could damage Plaintiff's ability to ultimately prove that her sex was a contributing factor in the discrimination, but it does not lead to the conclusion that there is no genuine issue of material fact on this point.  Defendants' Reply does not touch on Plaintiff's disparate treatment claims.  Defendants have cited plenty of facts that will likely help them defend against these claims at trial.  However, they have not met their burden to show that there is no genuine issue of material fact, and therefore are not entitled to summary judgment on the disparate treatment prong of Count I.

### b. Plaintiff Fails to Present a Prima Facie Case of Sexual Harassment, Entitling Defendants to Summary Judgment

In addition to disparate treatment, Count I of Plaintiff's Complaint also alleges disparate treatment on the basis of sex. Count I is brought pursuant to the MHRA, not federal law. Doc. 1-2 at ¶ 4. In order to succeed on a state law sexual harassment claim, Plaintiff must show five elements; (1) that she is a member of a protected class, (2) that she was subjected to unwanted sexual harassment, (3) that her gender was a contributing factor to the harassment, (4) that the harassment affected a term, condition or privilege of her employment, and (5) that the employer knew or should have known about the harassment and failed to take appropriate remedial action. *Mason v. Wal-Mart Stores, Inc.,* 91 S.W.3d 738, 742 (Mo. Ct. App. 2002). Defendants are entitled to summary judgment because Plaintiff cannot present a prima facie case of sexual harassment. With regard to the second element, Plaintiff has not alleged any sexual harassment. Her claim hinges on the fact that Defendant Harding used the word "f**k" in various situations and iterations, and often used the phrase "sucks to be you." Federal courts have recognized, in the sexual harassment context, that the word "f**k," while sexual in some situations, is often used simply as an exclamation, albeit a vulgar one. *See Eichler v. American Int'l Group, Inc.,* 2007 WL 963279, at *10 (S.D.N.Y. March 30, 2007) (noting the word's use as "merely an intensifier"); *but see F.C.C. v. Fox Television Stations, Inc.,* 129 S. Ct. 1800, 1807-08 (2009) (affirming, in the regulatory context, the FCC's power to levy fines for fleeting expletives, including non-literal uses of the word "f**k"). Plaintiff has not alleged any instance in which any party used the word "f**k" in a sexual context, such as to refer to copulation. Similar analysis can be applied saying that something "sucks." While in some contexts "sucks" is a coarse sexual reference, Defendant Harding's use of the phrase "it sucks to be you" roughly translates to "too bad." Additionally, calling someone a loser and throwing a pen and clipboard

at them, while rude and possibly actionable for assault, are plainly actions with no sexual element. Since Plaintiff has failed to allege any sexual harassment, she cannot present a prima facie case and Defendants are entitled to summary judgment on this prong of Count I.

Even assuming that the harassment Plaintiff alleges was sexual in nature, Plaintiff still cannot present a prima facie case because the harassment was not severe enough to affect a term, condition or privilege of employment. To meet this element, harassment must be "severe and pervasive," meaning so "intimidating, offensive or hostile…[that it] poisoned the workplace." *Gilooly v. Missouri Dept. of Health and Senior Servs.,* 421 F.3d 734, 738 (8th Cir. 2005). The Court is citing both federal and state cases because Missouri courts consider both. *See Mason,* 91 S.W.3d at 741 (recognizing that Missouri courts consider "not only Missouri law, but also [] applicable federal employment discrimination decisions"). Missouri courts have found harassment to be severe and pervasive where, for example, the CEO of a company

> "spilled wine on Cooper, [and] continued to touch her breasts and the area around her breasts with his napkin after she repeatedly told him to stop. [The CEO] attempted to touch Cooper several more times thoughout the night…Cooper was also subjected to several offensive comments from Quick through the night, including comments about her undergarments and…that she 'could take [her] shirt off, nobody would mind.' In addition…[the CEO] told Cooper that his wife would not mind if she came home with him."

*Cooper v. Albacore Holdings, Inc.,* 204 S.W.3d 238, 245 (Mo. Ct. App. 2006). While the events cited in *Cooper* apparently took place over the course of one evening, it is easy to see how repeated sexual touching against a person's will and repeated overtly sexual comments including propositions of sex would affect working conditions, even when limited in time to one evening. The events in *Cooper* were exacerbated by the fact that "this embarrassment and humiliation took place in front of other male [employees]." *Id.* Plaintiff does not allege anything approaching this standard. Plaintiff alleges multiple uses of the word "f**k" and "sucks." Even

11

assuming that these words always have inescapable offensive sexual connotations, those connotations are reduced when the words are used in the non-literal context. Furthermore, the parties agree that Plaintiff did not interact with Defendant Harding on an everyday basis. Doc. 14 at ¶ 7, Doc. 23 at ¶ 7. A few instances of bad language from a supervisor with whom one does not interact often do not amount to severe and pervasive harassment, even assuming that Defendant Harding's language constituted unwanted sexual harassment. "The use of foul language in front of both men and women is not discrimination based on sex." *Hocevar v. Purdue Frederick Co.,* 22 F.2d 721, 737 (8th Cir. 2000). *See also Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80 (1998) ("We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations."). For these reasons, Defendants are entitled to summary judgment on Plaintiff's hostile work environment sexual harassment claim in Count I.

### D. Lee's Summit Is Not Entitled to Summary Judgment on Plaintiff's Equal Pay Act Claim

The prima facie case for a claim under the Equal Pay Act is quite simple. "In order to establish a prima-facie case under the EPA, an employee must prove an employer paid different wages to men and women performing equal work." *Drum v. Leeson Elec. Corp.,* 565 F.3d 1071, 1072 (8th Cir. 2009). "The burden of proof then shifts to the employer to prove a statutory affirmative defense…(1) a seniority system; (2) a merit system; (3) a system that measures earnings by quantity or quality of production; or (4) a differential based on any other factor other than sex." *Id.*, 29 U.S.C. § 206(d)(1). In support of its position that the City should receive summary judgment on this claim, the City argues that it uses a seniority system and that the most senior, and therefore highest paid, ACO is a woman, Elizabeth Landis. Doc. 14 at 16, ¶ 49.

There are very few undisputed facts regarding this claim. However, the parties agree that Plaintiff's claim relates to overtime. In response, Defendant again argues that it uses a seniority system to pay its ACOs, which is a statutory defense. Defendant also cites to Plaintiff's deposition testimony in which she stated that she did not know whether she was treated differently from other ACOs with respect to "call-out pay."[5] Doc. 14-4, 104:1-4. In response, Plaintiff submits an affidavit stating that "male ACOs…were paid overtime for the work." Doc. 23-1 at ¶ 8d. Defendant argues that there is no genuine issue of material fact on this point, because Plaintiff has failed to explain the discrepancies between her deposition and affidavit. *See, e.g., Schiernbeck v. Davis,* 143 F.3d 434, 438 (8th Cir. 1998) (noting that failure to explain discrepancies can lead to a finding that the non-moving party has failed to create a genuine issue of material fact). However, the deposition testimony cited by Defendant deals only with one possible component of Plaintiff's Equal Pay Act claim; call-out pay. Plaintiff's Complaint alleges that she was not paid overtime for cleaning her truck, which male ACOs received. Doc. 1-2 at ¶ 21a. The Complaint alleges that she was not allowed compensation for training another ACO, which male ACOs received. *Id.* at ¶ 21b. Defendant devotes relatively little space in its briefing to Plaintiff's Equal Pay Act claim, seizing on the fact that the City used a seniority system and one statement made during Plaintiff's deposition. This is insufficient to show that there is no genuine issue of material fact on Count II. The inconsistency between Plaintiff's deposition and affidavit, however relevant, touches on only one of Plaintiff's theories of recovery. Furthermore, the fact that the City used a seniority system for regular pay is not

---

[5] "Call-out pay" refers to a set amount of overtime hours an ACO would receive if they took a call while off duty, regardless of the actual time worked. Plaintiff asserts that she was not allowed call-out pay if she took a call while still at the shelter, though off duty, but stated in her deposition that she did not know if Defendant Harding treated other ACOs differently.

relevant to Plaintiff's claim that she was not allowed overtime pay that male ACOs were allowed. Defendant's Motion for Summary Judgment on Count II is therefore DENIED.

## Conclusion

Plaintiff has failed to present a prima facie case of hostile work environment sexual harassment, malicious prosecution and abuse of process. As a result, Defendants are entitled to summary judgment on part of Count I and Counts III and IV. However, Defendants have failed to show that there is no genuine issue of material fact on Count II and the disparate treatment prong of Count I. Summary judgment is therefore inappropriate on those claims. Defendants' Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.

**IT IS SO ORDERED**

Dated: June 21, 2010                         /s/ Greg Kays_____
                                             GREG KAYS,
                                             UNITED STATES DISTRICT JUDGE